FILED
IN OPEN COURT

SEP 14 2018

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 1:18-cr-237 (TSE) |
| | ) |
| CHRISTOPHER LOUIS SORENSEN | ) |

## STATEMENT OF FACTS

Were this matter to go to trial, the United States of America would prove the following beyond a reasonable doubt:

1. Beginning in or about 2009, and continuing until 2018, in the Eastern District of Virginia and elsewhere, the defendant, CHRISTOPHER SORENSEN, did knowingly, intentionally, and unlawfully distribute oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1). The defendant also acquired oxycodone for personal use. During this period, the defendant sold over 5,000 tablets of oxycodone 30 mg tablets, totaling over 153,000 mg of oxycodone to his customers in the Eastern District of Virginia.

2. Beginning in or about 2015, and continuing until 2018, in the Eastern District of Virginia and elsewhere, the defendant did knowingly, intentionally, and unlawfully acquire for distribution and distribute a mixture and substance containing a detectable quantity of fentanyl, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1). The defendant also acquired fentanyl for personal use. During this period, the defendant sold over 400 grams of fentanyl to his customers in the Eastern District of Virginia.

3. To acquire oxycodone for distribution, the defendant frequently met with a medical provider in Maryland to obtain prescriptions of oxycodone. The defendant filled these prescriptions at a pharmacy located in Eastern District of Virginia, and he then sold the tablets for money. The defendant often distributed oxycodone to his customers in the vicinity of the pharmacy. He also distributed oxycodone to customers at his residence in the Eastern District of Virginia.

4. The defendant purchased fentanyl from a network of drug dealers in Baltimore, Maryland. The defendant used the proceeds of his sales of oxycodone as well as money he obtained from friends and customers to purchase fentanyl in Maryland. The defendant then transported the fentanyl to the Eastern District of Virginia, where he then distributed fentanyl to his customers. The defendant also used fentanyl and shared fentanyl with others.

5. On or about February 21, 2018, in the Eastern District of Virginia, the defendant distributed a mixture and substance containing a detectable amount of fentanyl to female friend, B.B. She later consumed the substance containing fentanyl, which resulted in serious bodily injury to B.B. B.B suffered respiratory arrest, a life threatening condition, and she required medical intervention, including CPR and Narcan, a life-saving opioid overdose reversal drug used by first responders. But for the fentanyl distributed by the defendant, B.B. would not have suffered serious bodily injury.

6. On or about April 3, 2018, in the Eastern District of Virginia, the defendant distributed six tablets of oxycodone 30mg to J.W. in exchange for $180.

7. On or about April 5, 2018, in the Eastern District of Virginia, the defendant distributed 10 tablets of oxycodone 30mg to J.W. in exchange for $300.

2

8. On or about April 5, 2018, in the Eastern District of Virginia, the defendant distributed 24 capsules of a mixture and substance containing fentanyl, weighing 2.93 grams, to A.W. in exchange for $300.

9. On or about April 9, 2018, in the Eastern District of Virginia, the defendant possessed with the intent to distribute 24 capsules of a mixture and substance containing fentanyl, weighing 2.79 grams.

20. On or about April 9, 2018, in the Eastern District of Virginia, the defendant possessed with the intent to distribute 6 tablets of oxycodone 30 mg.

21. The drug quantity attributable to the defendant's distribution of oxycodone and fentanyl, when converted under the U.S. Sentencing Guidelines to a marijuana equivalent, is at least 3,000, but not more than 10,000, kilograms of marijuana.

9. The acts described above were done willfully and knowingly and with the specific intent to violate the law and not by accident, mistake, inadvertence, or other innocent reason. This Statement of Facts does not contain each and every fact known to the defendant and to the United States concerning the defendant's and others' involvement in the charges set forth in the plea agreement.

10. The Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the defendant regardless of whether the plea agreement is presented to or accepted by a court. The defendant waives any rights that the defendant may have under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any such proceeding.

Respectfully submitted,

G. Zachary Terwilligetr
United States Attorney

By: /s/ James L. Trump
James L. Trump
Assistant United States Attorney

Kaitlin Paulson
Special Assistant United States Attorney

## Defendant's Stipulation and Signature

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that and the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Christopher Louis Sorensen
Defendant

## Defense Counsel's Signature

I am the attorney for Christopher Louis Sorensen. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is informed and voluntary.

_____
Adam M. Krischer
Defense Counsel

5